## CHENEY v. VAN ARSDALE.

Under the act of Congress of July 13th, 1866, iron castings, cast for thimble-skeins and pipe-boxes, between the 1st of September, 1866, and the 1st of March, 1867, were subject to an internal revenue tax.

ERROR to the Circuit Court for the Eastern District of Wisconsin, in which court a certain Van Arsdale brought suit against Cheney, collector of internal revenue, to recover duties paid the said collector on certain iron castings, cast for thimble-skeins and pipe-boxes; matters used in the construction of the running-gear of vehicles for the road. The case was thus:

An act of June 30th, 1864,† to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes, amended by an act of March 3d, 1865,‡ laid duties on nearly every sort of manufacture, including pig iron, railroad iron, all iron advanced beyond blooms, slabs, or loops, on iron castings used for bridges or other permanent structures, on stoves and hollow-ware, on steel in ingots, bars, sheet, or wire, &c., &c.

An act of July 13th, 1866, entitled "An act to reduce in-

---

* 14 Wallace, 661.          † 13 Stat. at Large, 223.          ‡ Ib. 469.

ternal taxation and to amend an act entitled 'An act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes,' approved June 30th, 1864, and acts amendatory thereof," in its 9th section* imposes—

"On all *iron*, not otherwise provided for, advanced beyond muckbar, blooms, slabs, or loops, and not advanced beyond bars, and band, hoop, and sheet iron, &c., a tax of $3 per ton.

"On plate iron, &c., and cut nails and spikes, &c., a tax of $5 per ton.

"On *steel made directly from muckbar, blooms, slabs, or loops, a tax of $3 per ton.*

"On stoves and hollow castings in all conditions, whether rough, tinned, or enamelled, and on *castings of iron*, not otherwise provided for, a tax of $3 per ton."

The act in that same section† imposes—

"On all manufactures, not otherwise provided for, of cotton ... wood ... iron ... steel, or of other materials, a tax of 5 *per cent. ad valorem.*"

The same act in a subsequent, its 10th, section‡ exempts—

"Castings for iron bridges, malleable iron castings unfinished, and castings of all descriptions made specially for locks, safes, looms, spinning machines, steam engines, hot air and hot water furnaces, and sewing machines, and not sold or used for any other purpose, and upon which a tax was assessed and paid on the article of which the casting was part.

"Steel made from iron *advanced beyond* muckbar, blooms, slabs, or loops in ingots, bars, rails made and fitted for railroads, sheet, plate, coil or wire, hoop-skirt wire, covered or uncovered; car-wheels, *thimble-skeins and pipe-boxes*, and springs, tire and axles *made of steel* used exclusively for vehicles, cars, or locomotives; and clock springs, faces, and hands."

We have thus far last spoken of an act of July 13th, 1866. By an act of March 2d, 1867, it was enacted,§

"That on and after March 1st, 1867, in addition to the articles

---

* 14 Stat. at Large, 130, 131.    † P. 132.
‡ Pp. 148, 149, 150.    § 14 Stat. at Large, 477.

now exempt by law, the articles and products hereinafter enumerated shall be exempt from internal tax, namely, *thimble-skeins and pipe-boxes made of iron.*"

With these statutes on the statute-book Van Arsdale, a manufacturer of iron castings, &c., brought the suit already referred to. The question presented by the suit was whether iron castings, cast for thimble-skeins and pipe-boxes, between the first day of September, 1866, and the first day of March, 1867, were subject to an internal tax under the act of Congress of July 13th, 1866.

Evidence having been given tending to show that up to July, 1866, thimble-skeins and pipe-boxes had not been made of steel, but only of iron, the court instructed the jury that the act in question "exempted from taxation thimble-skeins and pipe-boxes, whether made of steel *or iron,* cast or wrought."

Verdict and judgment having been given for the plaintiff, the collector, whose counsel had contended that the exemption applied only when the articles were made of *steel,* brought the case here.

*Mr. J. W. Cary, for the manufacturer, and in support of the charge:*

To sustain the construction given by the government, the word "steel" at the beginning of the clause of the second paragraph of the 10th section of the act of July 13th, 1866, commencing "steel made from iron," &c., must necessarily operate upon and qualify every article specified in the clause.

Does it? We think not. First, observe the punctuation; after the word "uncovered," there is a semicolon, and then follows "car-wheels, thimble-skeins, and pipe-boxes," articles that are never made of steel, and then comes the following: "and springs, tire, and axles *made of steel.*" Now if the intention was to have the word "steel" at the beginning of the clause qualify every article named in the clause, why did Congress deem it necessary to again use the word "steel," so as to say that only "springs, tire, and axles *made of steel*" should be exempt? Is not this the explanation,—that having

exempted car-wheels, thimble-skeins, and pipe-boxes, articles never made of steel, and which were to be exempt without reference to the material of which they were made, that they deemed it necessary to subsequently use the word "steel" so as to confine the exemption of certain articles afterwards named to such only as should be made of steel.

Again, it must be presumed that Congress in exempting thimble-skeins and pipe-boxes, intended to exempt something which had an existence and was liable to taxation; otherwise, why the necessity of the exemption? It is a fact beyond question that these articles were never made of steel, but of iron. Then must we not necessarily come to the conclusion that it was the intention to exempt thimble-skeins and pipe-boxes made of iron?

The act of March 2d, 1867, exempting "thimble-skeins and pipe-boxes made of *iron*," is but to make more clear the exemption meant to be given by the 10th section of the act of July 13th, 1866.

*Mr. G. H. Williams, Attorney-General, contra.*

Mr. Justice STRONG delivered the opinion of the court.

The question in controversy arises under the act of July 13th, 1866. That was an act "to reduce internal taxation, and to amend an act entitled 'An act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes; approved June 30th, 1864, and acts amendatory thereof.'" By its ninth section it was enacted that there should be assessed, collected, and paid "on stoves and hollow ware in all conditions, whether rough, tinned, or enamelled, *and on castings of iron*, not otherwise provided for, a tax of three dollars per ton." This included iron castings of every kind, except castings for iron bridges, unfinished malleable iron castings, and castings made specially for locks, safes, looms, spinning machines, steam engines, hot air and hot water furnaces, and sewing machines, and not sold or used for any other purpose, and upon which a tax was assessed and paid on the article of

which the casting was a part. All these were exempted from tax by the tenth section, and special provision was therefore made for them. It is, therefore, clear that castings made for thimble-skeins and pipe-boxes, between September 1st, 1866, and March 1st, 1867, were subject to a tax of three dollars per ton, unless they were specially exempted. This we do not understand to be controverted. But it is insisted that they were exempted by the tenth section of the act. That section, it should be borne in mind, had reference to the provisions of the revenue act of June 30th, 1864, as amended by the act of March 3d, 1865, which imposed taxes upon most, if not all, of the articles which, in 1866, it was proposed to put upon the free list. It carried out the design avowed in the title, a reduction of taxation. It mentioned in detail and in alphabetical order certain products, articles, and classes of articles which had been previously taxed, and it declared that they should be exempt from internal taxation. Among these was " steel made from iron, advanced beyond muckbar, blooms, slabs, or loops, in ingots, bars, rails made and fitted for railroads, sheet, plate, coil or wire, hoop-skirt wire, covered or uncovered, car-wheels, thimble-skeins, and pipe-boxes, and springs, tires, axles made of steel used exclusively for vehicles, cars, or locomotives, and clock-springs, faces, and hands." But was this an exemption of all thimble-skeins and pipe-boxes, as ruled in the court below, or only of those articles when made of steel? Waiving consideration of the question whether the exempting clause did not refer to the ad valorem tax of five per cent., which the act imposed on all manufactures not otherwise provided for, wholly or in part of cotton, . . . wood, . . . iron, steel, . . . or other materials, rather than to the specific tax upon the materials of which those manufactures, when finished, were wholly or in part composed, we think the exemption cannot be construed beyond thimble-skeins and pipe-boxes made of steel and used for vehicles, cars, or locomotives, and, consequently, that it did not include thimble-skeins and pipe-boxes made of iron. It is quite evident to us that all the articles enumerated in this

clause of the exempting section were steel articles. If this is not so, the act is plainly self-contradictory. Its tenth section must be construed in connection with its other sections, and so construed, if possible, that effect shall be given to every part. But if we look at the ninth section it will be seen that the act imposed a specific tax upon bars, upon rails for railroads, upon sheet iron, plate iron, coil and wire, upon castings of iron for which no special provision was made, as also upon all steel made directly from muckbar, blooms, slabs, or loops. The act of 1864 had taxed all steel, but the act of 1866 was, in this particular, less comprehensive. It, however, imposed a tax upon all steel made directly from muckbar, blooms, slabs, or loops. It is in view of these provisions of the ninth section, and in harmony with them, that the exemptions made by the tenth section are to be construed. It cannot be admitted that the same act which taxed specifically certain varieties of iron in one section, expressly exempted them in the next. Such inconsistency is not to be attributed to Congress. Nor is it at all necessary. The imposition of taxes and the declared exemptions are perfectly consistent with each other if the exempting clause is construed, as it may be, to include only articles made of steel. Thus steel itself is taxed when made directly from muckbar, blooms, slabs, or loops, and exempt when made from more advanced iron. Bars and rails are taxed when made of iron, as are sheet iron, plate iron, iron coil and wire, but they are exempt when made of the described variety of steel. Such a construction, and such alone, preserves the consistency of the act and gives effect to every part. And it is the natural construction. The excepting clause includes three classes of articles. The first is steel made from iron in an advanced state, whether, when made, it be ingots, bars, rails for railroads, sheet, plate, coil, or wire, or hoop-skirt wire, whether covered or uncovered. The second class is car-wheels, thimble-skeins, and pipe-boxes, and springs, tires, and axles, made of steel, used exclusively for vehicles, cars, or·locomotives. The third class is clock-springs, faces, and hands.

But why, it is asked, if only steel articles were intended to be embraced in the clause, repeat the qualification ? Why add to the words " springs, tires, and axles," the superfluous words " made of steel ?" The reason will be evident when the whole act is considered. It is to be observed that the articles mentioned in the first class are those made of a particular kind of steel, namely, that made of iron advanced *beyond* muckbar, blooms, slabs, or loops. Upon such steel no tax was imposed by the ninth section, though one had been by the act of 1864. It is true, as we have said, the ninth section levied a tax upon steel, but it was upon such steel only as was made directly from muckbar, blooms, slabs, or loops, not from iron in a higher state of advancement. The second class embraces articles made of steel generally, used exclusively for vehicles, cars, or locomotives. They are exempt, if made of steel, no matter what the kind of steel may be, whether made from muckbar, blooms, slabs, or loops, or from iron advanced beyond those stages. It was therefore necessary to repeat the qualification "made of steel," for had it not been repeated, only those car-wheels, thimble-skeins and pipe-boxes, and springs, tires, and axles, or the last three named of them, which were made of a particular kind of steel, would have been exempted. The repetition enlarged the list. Thus there is no force in the argument that the use of the words "made of steel" was superfluous and unmeaning, if the exempting clause was designed to include only steel articles.

It is further said that when the act was passed thimble-skeins and pipe-boxes were not made of steel, and witnesses testified that they never knew that material employed for such articles. From this it is argued that Congress must have intended to exempt them when made of iron, for they must be presumed to have intended an exemption of something that had an existence. There is some plausibility in the argument, but it is more specious than sound. Congress must have known that of late years the uses of steel as a substitute for iron had been rapidly increasing. It was but a short time before that steel rails, tires, and axles had come

into use. Thimble-skeins and pipe-boxes are used in connection with axles, and it would seem, therefore, to have been not an unreasonable presumption that Congress contemplated the probable substitution of steel in their manufacture, even if they were aware that the substitution had not already been made. The exemption itself was an encouragement to the use of steel.

It may be added that our opinion respecting the meaning of the exemption and its extent has some confirmation in the fact that in 1867 Congress, by a new enactment, expressly exempted thimble-skeins and pipe-boxes "*made of iron.*" Such legislation indicates, at least, a conviction on their part that those articles were not placed in the free list by the act of 1866.

We think, therefore, the Circuit Court erred in instructing the jury that the act of 1866 exempted from taxation thimble-skeins and pipe-boxes, whether made of steel or iron, cast or wrought, and that no taxation on them could be lawfully assessed.

JUDGMENT REVERSED, AND A VENIRE DE NOVO AWARDED.